IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MOZAINA KOBAISY                                                                                      PLAINTIFF

V.                                                                                           3:11CV151-NBB-SAA

UNIVERSITY OF MISSISSIPPI, IKHLAS KHAN,
LARRY WALKER, BEVERLY M. BUTTS,
AND BARBARA L. WELLS                                                                         DEFENDANTS

**MEMORANDUM OPINION**

Presently before the court is the defendants' motion for summary judgment. Upon due consideration of the motion, response, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

The plaintiff, Mozaina Kobaisy, is a native of Syria and a naturalized United States citizen. She was hired as a research scientist at the National Center for Natural Products Research ("the Center") at the University of Mississippi in 2004. Defendants Dr. Larry Walker and Dr. Ikhlas Khan advised the plaintiff of the position and encouraged her to apply. Dr. Khan recommended that the University hire her, and he served as her direct supervisor throughout her employment. The plaintiff was hired as a full-time, permanent, non-tenured staff member. As such, the plaintiff was entitled to no expectation of continued employment.[1] Attached to the letter confirming her employment was a document containing the terms and conditions of her employment which stated explicitly that the plaintiff's position was contingent upon the Center continuing to receive external funding for her position.

---

[1] *See Hall v. Board of Trustees of State Institutions of Higher Learning*, 712 So. 2d 312, 320 (Miss. 1998).

The position required the plaintiff to do extensive "wet" laboratory work in natural products chemistry. In January 2006, while performing a lab experiment, the plaintiff was injured by a piece of laboratory equipment which exploded. She was initially temporarily totally disabled and is now permanently partially disabled, having lost the use of one eye. She asserts that she suffers from both physical and mental impairment caused by the accident.

Much of the funding for the Center is supported by grants and contracts from the USDA and the Food and Drug Administration ("FDA"). FDA funds are typically awarded to further the advancement of specific assigned goals while USDA funds support the Center's basic infrastructure. After the plaintiff's January 2006 accident, the University placed the plaintiff on paid leave and, for the fiscal year beginning after the accident, changed the source of funding for her position so that she could be paid out of general USDA funds rather that project-specific FDA funds. Many of the plaintiff's co-workers donated personal leave to the plaintiff so that she could remain on paid leave for the maximum period allowed. Even Defendant Dr. Khan donated 160 hours of his personal leave time to the plaintiff.

On August 15, 2006, the plaintiff's donated leave expired, and the University placed her on leave without pay. She was not initially terminated, nor did she resign. Through an apparent oversight, she continued to remain on the employment roll as an employee of the University for several years. The plaintiff had no further contact with Dr. Khan or Dr. Walker regarding continued employment as a research scientist at the Center from August 2006 until late 2010. In December 2010, the plaintiff approached the University and requested to return to her former position. The University advised the plaintiff at that time that her job was no longer available and refused her request.

The plaintiff subsequently filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination in violation of the Americans with Disabilities Act ("ADA"). The EEOC issued the plaintiff's right to sue letter on November 16, 2011. The plaintiff filed the present action on November 30, 2011, asserting violations of Section 1983, Title VII, and the ADA, and a claim of civil conspiracy under state law. The court granted the defendants' motion to dismiss plaintiff's claim for money damages under Section 1983 and the ADA, finding that the University, as an arm of the state, and its employees in their official capacities were entitled to Eleventh Amendment immunity. The court found that the individual defendants were afforded the protection of qualified immunity to any federal claims against them in their individual capacities. The court also dismissed the plaintiff's Title VII claim of national origin discrimination because her EEOC charge on that claim was filed well outside the 180-day limitations period. Finally, the court dismissed the state law conspiracy claim against the defendants in their official capacities. The plaintiff's only remaining claims are for injunctive relief to regain her employment based on the plaintiff's claim of national origin discrimination under Section 1983 and her claim for state law civil conspiracy against the individual defendants in their individual capacities.

Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[T]he issue of fact must be 'genuine.' When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). Further, self-serving "affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

The court must render summary judgment in favor of the moving party if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000). The Supreme Court has cautioned, however, that the ruling court must not encroach upon the functions of the jury. The Court stated in *Reeves* as follows:

> [T]he court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence. The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.

4

*Id.* (citations omitted). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

Section 1983 claims against state officials for money damages are barred by sovereign immunity, but claims against state officials for prospective injunctive relief under Section 1983 are not barred. *Yul Chu v. Miss. St. Univ.*, 901 F. Supp. 2d 761, 774-75 (N.D. Miss. 2012) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). The successful plaintiff pursuing a Section 1983 claim will "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe ex rel. Magee v. Covington County Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012).

In this circuit, Section 1983 employment discrimination claims are analyzed under the same evidentiary framework as Title VII claims. *Bell v. South Delta Sch. Dist.*, 325 F. Supp. 2d 728, 736 (S.D. Miss. 2004) (citing *Lawrence v. Univ. of Texas Medical Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999)). The plaintiff must show intentional, unlawful discrimination, and she may do so with either direct or indirect evidence. In the absence of direct evidence of discrimination, the court analyzes the plaintiff's claim under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To establish a prima facie case of discrimination, the plaintiff must show that she (1) is a member of a protected class; (2) was qualified for the position at issue; and (3) suffered an adverse employment action. *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir.

2009). The plaintiff must also show either that she was replaced by someone who was not a member of a protected class or that she "was treated less favorably because of [her] membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Id.* Once the plaintiff has established a prima facie case, "an inference of intentional discrimination is raised, and the burden of production shifts to the employer, who must offer an alternative nondiscriminatory explanation for the adverse employment action." *Id.* "Once the employer offers evidence of such a legitimate reason, the burden shifts back to the plaintiff-employee to raise a genuine issue of material fact that this non-discriminatory reason is merely pretextual." *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). At this point, "the factual inquiry proceeds to a new level of specificity." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981). "Although the *McDonnell Douglas* framework shifts the burden of production between the plaintiff and the defendant, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Pierce v. Texas Dept. of Transportation*, No. 3:01CV2098-AH, 2002 WL 31757635, at *3 (N.D. Tex. Dec. 4, 2002) (quoting *Burdine*, 450 U.S. at 253).

The court finds at the outset that the plaintiff's claims against three of the individually-named defendants in their official capacities must be dismissed. The plaintiff testified that she has no information showing that defendants Larry Walker, Beverly Butts, or Barbara Wells discriminated against her on the basis of her national origin. The plaintiff's deposition testimony reveals the following:

6

> Q: Okay. But there's no information you have that suggests that Dr. Walker discriminated against you based on your national origin; is that fair?
>
> A: Yes.
>
> Q: That is fair?
>
> A: Yes.
>
> ***
>
> Q: Okay. So how has Beverly Butts discriminated against you based on your national origin, that's my question? You've sued her –
>
> A: Not based on my national origins, but there were emails . . .
>
> Q: Okay. So let me go back to my question. Do you have any information, any basis –
>
> A: No. I'm sorry. If she's on national origin, no.
>
> Q: Okay. Dean Wells, same question?
>
> A: No.

The plaintiff asserts, with no supporting evidence, that Walker, Butts, and Wells "sign off anything that's required from Khan." The plaintiff admitted, however, that she has no proof that her allegations against Walker, Butts, and Wells are true, and she has indeed failed to provide such evidence. The court therefore finds that the plaintiff's Section 1983 claims against these three defendants in their official capacities must be dismissed.

The court further finds that even without this testimony revealing that the plaintiff has no viable federal claims against these defendants, they and Dr. Khan are entitled to summary judgment because the plaintiff cannot establish her prima facie case; nor can she show that the

defendants' proffered legitimate, non-discriminatory reasons for their failure to reinstate the plaintiff are pretext for discrimination.

The defendants assert that the plaintiff cannot establish a prima facie case of discrimination for a number of reasons. First, they assert that she was not qualified in 2010 when she requested to be returned to her former position. Prior to her accident, the plaintiff worked as a research scientist. After the accident, the plaintiff asserts that she can no longer perform "wet" lab work, which is required of all research scientists at the Center. The plaintiff's primary care physician referred the plaintiff to a psychiatrist, Dr. Harrison Evans, for an evaluation two years after her accident. At that time, Dr. Evans diagnosed the plaintiff with Post Traumatic Stress Disorder ("PTSD"), which he asserts was caused by the explosion in the lab. Dr. Evans stated that the plaintiff "has a good grasp of what work might activate arousal states [of her PTSD] and what work she can perform." He further stated, "In my medical opinion, there is no psychiatric contraindication to her returning to work in the . . . group which does analytical work." In other words, Dr. Evans concurred with the plaintiff's position that she should not perform wet lab work but only analytical work. It is uncontested, however, that the University did not have such a position available in 2010; nor does it have such a position available now.

This issue was addressed at the plaintiff's deposition as follows:

Q: My question is this: At the time in October of 2010 – I asked you this earlier, and I believe you said you didn't know one way or the other whether the funding that had funded your position was still available or not. You did not know that one way or the other; did you?

A: No.

Q: Okay. You did know that you could not do the job you had been doing?

A: Yes.

Q: Okay. And you knew that whatever it was that you were going to be doing at the University was going to have to be something different than what you had done before?

***

Q: Okay. Let's make sure the answer you're giving is to the question I've asked. You knew in the fall of 2010 that you could not go back into the job you had at the University from 2004-2006?

A: Yes.

It is also uncontested that other research scientist positions have been available at the Center, but all of those positions require wet lab work. The plaintiff, it would appear, would ask the defendants to accommodate her inability to perform wet lab work by creating a position for an analytical scientist at the Center where one does not exist. If the plaintiff had set forth a viable ADA claim, the University could be charged with a duty to accommodate limitations brought on by her disability.[2] The plaintiff's ADA claim has been dismissed, however, and the defendants are under no obligation at this point to accommodate the plaintiff in that regard.

The defendants also assert that the plaintiff did not suffer an adverse employment action. The plaintiff argues that an adverse employment action occurred in 2010 when she was "denied

---

[2]"[T]he term 'discriminate' [within the context of the ADA] includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (quoting 42 U.S.C. § 12112(a)(5)(A)).

reinstatement" to her former position. The defendants maintain, however, that at the time the plaintiff requested reinstatement, the funds for that position were no longer available and the work required by the position had been completed. The plaintiff argues that funds were available to continue her position, that the Center's funding had increased, not decreased, that the Center did not classify funds or positions, and that the Center paid her with "general," as opposed to "dedicated," funds.

In an effort to give each party the benefit of the doubt on the funding issue, the court ordered further briefing specifically on that issue, and the parties complied. It is now clear to the court – and it should be clear to any rational trier of fact – that the defendants' position regarding funding cannot be genuinely contested. The defendants have set forth sufficient evidence, which the plaintiff has been unable adequately to refute, that the plaintiff was paid with conditional federal funds that expired in fiscal year 2007. The plaintiff directs the court to a spreadsheet which she misunderstands to represent the Center's total funding, or at least funds available to support a new position for her. The spreadsheet at issue represents only Fund 10 dollars, however. "Fund 10" is the University's term used to refer to monies appropriated by the Mississippi Legislature as part of the State's annual budget. This direct funding supports salaries for the Center's administrative-level employees and some faculty. Plaintiff was among neither group.

The Center also receives annual awards from federal sources, the USDA and the FDA, both of which contributed to the funding of Plaintiff's former position at certain points. This funding is appropriated, allocated, budgeted, distributed, exhausted, and accounted for on an annual basis. The University refers to these federal funds as "Fund 30" dollars.

Throughout her employment at the University, the plaintiff received her salary exclusively from Fund 30 dollars. A condition of this funding is that when the external funds expire, so does the position supported by those funds. The plaintiff understood that this condition applied to her continued employment. She acknowledged this understanding at her deposition:

> Q: And you knew when you received this letter that the ability of the University to maintain this position you were being hired for depended on the availability of the external funds, correct?
>
> A: That's right.

The issue was again addressed as follows:

> Q: Even though it's university, it was still government funding?
>
> A: Well, yes, it's FDA and other funding. It depends on the funding, you know, depends on the grant.

It is axiomatic that the plaintiff cannot survive summary judgment by setting forth conclusory allegations unsupported by the record, with only a scintilla of evidence, or by directing the court to what she contends is evidence of a genuine issue of material fact, such as the Fund 10 spreadsheet addressed above, but which in reality is simply evidence that she has misinterpreted. *See Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) ("[C]onclusory facts...are insufficient to defeat a motion for summary judgment.").

Further, at the time the plaintiff contends an adverse employment action took place, she had not been released to return to work by her physician. In fact, the plaintiff did not obtain a

11

medical release from her physician until March 25, 2013, and that release limited her tasks to analytical assignments with no wet lab work.

Next the defendants assert that the plaintiff cannot identify a proper comparator. To prove disparate treatment, the Fifth Circuit requires a plaintiff to show that the employer gave preferential treatment to a similarly situated employee under nearly identical circumstances. *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001). This is an exacting standard. *See Suggs v. Lowndes County Sch. Dist.*, 804 F. Supp. 2d 510, 516 (N.D. Miss. 2011) (citing *Lee v. Kansas City Southern Railway Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009)). The Fifth Circuit has stated:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly-situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly-situated . . . . [C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Id.* As the defendants note, the plaintiff does not assert she was a victim of discrimination because she is Syrian but rather because she is *not* Indian. To meet the standard, the plaintiff must identify a comparator who was a research scientist on leave without pay for a number of years, had the same supervisor as the plaintiff, and who was either Indian, or at least was not of the same national origin as the plaintiff. The plaintiff must also show that the comparator enjoyed more favorable treatment than the plaintiff. The plaintiff, however, has failed to identify another individual who meets these criteria but who was not denied reinstatement to an unfunded position upon that person's return. Further, she has not identified a research scientist of Indian

12

or other nationality who either replaced her in her former position or was treated more favorably than she was.

The same facts which prevent the plaintiff from establishing her prima facie case are the facts which the defendants set forth as legitimate, non-discriminatory reasons for their failure to reinstate the plaintiff. First, the plaintiff could not perform the essential functions of her position as a research scientist. Second, the funds upon which the plaintiff's position was contingent were no longer available. The court has already examined these assertions of the defendants above and found them to be legitimate. The court finds that the plaintiff cannot establish that the defendant's proffered reasons are pretext for discrimination.

The court further finds that Dr. Khan is entitled to the "same actor inference." "The same actor inference creates a presumption that [discriminatory] animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Spears v. Patterson UTI Drilling Co.*, 337 Fed. Appx. 416, 421-22 (5th Cir. 2009). The inference is premised on the argument that it is "inherently inconsistent" that the same person would hire an individual who was not a member of a favored class and then discriminate against her because she was not a member of a favored class. *Stover v. Hattiesburg Public Sch. Dist.*, 549 F.3d 985, 994-95 (5th Cir. 2008). The same actor inference, however, is not irrebuttable. *Spears*, 337 Fed. Appx. at 422 (citing *Haun v. Ideal Industries, Inc.*, 81 F.3d 541, 546 (5th Cir. 1996)).

Dr. Khan advised the plaintiff of the availability of her position and encouraged her to apply. He was a member of the plaintiff's hiring committee and approved her hire. After the plaintiff's accident, he donated 160 hours of personal leave to allow her to continue to be paid.

For these reasons, the court finds that the same actor inference weighs in favor of the fact that Dr. Khan did not intentionally discriminate against the plaintiff.

The court stated in its memorandum opinion ruling on the defendants' motion to dismiss that it would decline to exercise jurisdiction of the plaintiff's remaining state law claim if the plaintiff's claim for injunctive relief under Section 1983 was disposed of during the course of this litigation. The Fifth Circuit's general rule is that a district court decline jurisdiction when all federal claims are dismissed before trial. *See Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 601-02 (5th Cir. 2009). As such is indeed the current posture of this case, the court finds that it should decline jurisdiction of the state law claim and dismiss it without prejudice.

## Conclusion

For the foregoing reasons, the court finds that the defendants' motion for summary judgment is well taken and should be granted. The plaintiff's Section 1983 claim for national origin discrimination should be dismissed with prejudice. The plaintiff's remaining state law claim for civil conspiracy should be dismissed without prejudice. A separate order in accord with this opinion shall issue this day.

This, the 21st day of August, 2014.

        /s/ Neal Biggers
        **NEAL B. BIGGERS, JR.**
        **UNITED STATES DISTRICT JUDGE**